## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KENNETH L. CONTEE
  *On his behalf and on behalf of three*
  *Classes of similarly situated persons*

  Plaintiff,

v.

RUSHMORE LOAN MANAGEMENT
SERVICES LLC

And

U.S. BANK NATIONAL ASSOCIATION,
NOT IN ITS INDIVIDUAL CAPACITY
BUT SOLELY AS TRUSTEE FOR RMTP
TRUST, SERIES 2021 BKM-TT

  Defendants.

Civil No. 23-0588-BAH

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kenneth L. Contee, on his own and on behalf of three classes of similarly situated persons, brought suit against Rushmore Loan Management Services LLC and U.S. Bank National Association in its capacity as trustee for RMTP Trust (collectively "Defendants") alleging violations of the Maryland Consumer Debt Collection Practices Act, Md. Code Ann., Com. Law § 14-201 et seq. ("MCDCA"), the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301 et seq. ("MCPA"), and the Federal Debt Collection Practices Act, 25 U.S.C. § 1692 et seq. ("FDCPA"). ECF 15. Pending before the Court is Defendant Rushmore's Motion to Dismiss Counts I and II of the Plaintiff's Amended Complaint (the "Motion"). ECF 21. Plaintiff filed an opposition, ECF 22, and Defendant filed a reply, ECF 23. All filings include memoranda of law

and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND[2]

Contee essentially alleges that Rushmore's practice of charging "recoverable corporate advances" in a vague and confusing manner violates both state law as well as federal debtor protection laws. ECF 15, at 22 ¶ 23, 25 ¶ 82. He brings both counts solely against Defendant Rushmore on his behalf as well as on behalf of a putative class of similarly situated individuals.[3] *Id.* Though the Amended Complaint contains several other claims, Rushmore moves to dismiss only Counts I and II, so only the conduct pertaining to those claims is discussed *supra*. ECF 21, at 1.

In October 2016, Contee executed a mortgage agreement with Atlantic Coast Mortgage, LLC in the amount of $434,137. ECF 22-2, at 3, at 12.[4] A year later, Wells Fargo Bank, N.A.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] In evaluating a motion to dismiss, the Court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency,* 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.,* 801 F.3d 412, 422 (4th Cir. 2015)). "Indeed, a court cannot 'favor[ ] its perception of the relevant events over the narrative offered by the complaint,' thereby 'recasting 'plausibility' into 'probability.'" *Id.* (quoting *SD3, LLC,* 801 F. 3d at 430). Accordingly, for purposes of evaluating the Motion, the Court accepts as true the facts alleged in the amended complaint and summarizes them in this section.

[3] As there has been no class certification pursuant to Fed. R. Civ. P. 23, the Court considers Counts I and II solely on the basis of Plaintiff's individual claims. At the motion to dismiss stage, Plaintiff's claim only survives based on his own unique and specific facts. *See Parrish v. Arvest Bank,* 717 Fed. Appx. 756, 760 (10th Cir. 2017) ("A putative class action complaint should be dismissed if the named plaintiff's individual claims fail to state a claim for relief.")

[4] In evaluating a motion to dismiss, the Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint

("Wells Fargo") was assigned the deed of trust and note and became the servicer of the mortgage; on March 1, 2021, Rushmore became the servicer of the mortgage, and the deed of trust was assigned from Wells Fargo to U.S. Bank National Trust, solely in its capacity as a trustee for the RMAC Trust. ECF 15, at 15 ¶¶ 26–27. The deed of trust was assigned twice more, on June 7 and November 4, 2021, to U.S. Bank National Trust solely in its capacity as trustee for the RMTP Trust and then to Rushmore Loan Management Services, LLC, respectively. *Id.* at 11 ¶¶ 28–29.

On January 31, 2018, Wells Fargo initiated foreclosure proceedings against Contee after he experienced a reduction in household income and subsequently fell behind on his mortgage payments. ECF 15, at 11 ¶ 30. The foreclosure case was initially dismissed on March 22, 2019 for lack of prosecution, though the court later vacated the dismissal and stayed the case pending resolution of Contee's bankruptcy petition, which he had filed on June 5, 2018. ECF 22-2, at 17, at 25. Rushmore became the servicer of Contee's mortgage on March 1, 2021, during the time he was in default on the loan and engaged in bankruptcy proceedings. ECF 15, at 10 ¶ 27. Contee alleges that Rushmore, as servicer of the mortgage, engaged in a variety of unlawful conduct, including refusing to accept distributions from Contee's Chapter 13 Trustee and charging sums Contee did not owe.[5] *Id.* at 12 ¶ 34, at 13 ¶ 39–42.

---

and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Here, the parties have provided a Joint Record, ECF 22-2, which includes the original mortgage agreement, information on Contee's bankruptcy proceedings, monthly statements, and communications between Rushmore and Contee. Plaintiff repeatedly references these documents in the amended complaint and relies heavily on them in stating his claim. Thus, the Court reviews these records on the basis they are "integral to the complaint and authentic." *Fusaro*, 930 F.3d at 248.

[5] Contee raises claims related to these allegations elsewhere in his complaint but they are not the subject of the Motion.

3

The issue currently before the Court concerns Contee's allegation that Rushmore is improperly charging him a fee of $2,606.40 for "recoverable corporate advances." ECF 15, at 14 ¶ 46. $2,515.00 of this sum was allegedly incurred by Wells Fargo as prior servicer of the mortgage but Contee maintains that he paid that amount in full when he settled his bankruptcy case. *Id.* A loan payment ledger for the mortgage, included in the parties' Joint Record, indicates that on December 18, 2017, Contee incurred $720 in attorney's fees and $300 in title costs, while on January 30 and 31, 2018, he incurred $475 in filing fees and court costs, $60 in recording fees, and $960 in attorney's fees. ECF 22-2, at 32. Added together, this would appear to comprise the total of $2,515 that Rushmore claims Contee owes from the time Wells Fargo serviced the loan. *Id.* at 67.

Indeed, Rushmore claimed this amount on both the March 11, 2021 and May 28, 2021 mortgage statements that it sent to Contee. ECF 22-2, at 41. Contee alleges that on July 26, 2021, "he sent a detailed letter to Rushmore explaining that he paid the exact amount in arrearage that Rushmore and the [b]ankruptcy court told him to pay, and he could not be behind on his payments." ECF 15, at 15 ¶ 48. Six months later, after Rushmore had failed to fix the alleged billing errors on Contee's statements, Contee filed a complaint with the Consumer Financial Protection Bureau "stating the Rushmore is erroneously billing him for a delinquency despite paying on time and curing the full arrearage deficiency in a chapter 13 bankruptcy." *Id.* ¶ 49. Throughout this time, Rushmore continued to charge not only the original corporate advance fees, but additional fees in the amount of $75, $15, and $1.40, which it described on Contee's August 2021 statement as being due for "attorney fees" and "foreclosure costs," bringing the total claimed to $2,606.40. ECF 22-2, at 47.

In response to additional communication from Contee, Rushmore sent correspondence on July 26, 2022 alleging that under the terms of the mortgage agreement, the "[r]ecoverable [c]orporate [a]dvance [b]alance includes the amounts the lender has advanced to protect its interest in the property" including the cost of "property inspections, property preservation, and legal counsel to protect its security interest." ECF 15, at 17 ¶ 54; *see also* ECF 22-2, at 67. In the same letter, Rushmore provided a generalized breakdown of alleged fees, noting charges of $75, $960, and $720 in "foreclosure fees" and $1.40, $15, $60, $475, and $300 in "foreclosure costs." ECF 22-2, at 71.

Rushmore again included a charge for "recoverable corporate advances" in the amount of $2,606.40 on Contee's August 15, 2022 statement. ECF 22-2, at 57. Contee argues that Rushmore's practice of billing fees under the line item "recoverable corporate advances" prevented him from assessing the validity of the claimed debt and violates the FDCPA, MCDCPA, and MCPA. ECF 15, at 23–24 ¶¶ 74–78.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

5

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. Of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

If a complaint allegation sounds in fraud, it must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) in order to survive a motion to dismiss. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784, 789 (4th Cir. 1999). Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to satisfy this standard, plaintiffs "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). Courts in the District of Maryland have consistently held that FDCPA and related claims do "sound in fraud" for the purposes of 9(b) requirements.[6] *See, e.g., Flournoy v. Rushmore Loan Mgmt. Serv., LLC*, No. 8:19-cv-00407-PX, 2020 WL 1285504, at *4 (D. Md. Mar. 17, 2020), and *Bowman v. Select Portfolio Servicing, Inc.*, 704 F. Supp. 3d 633, 640 (D. Md. 2023). Accordingly, this Court follows suit.

---

[6] There is disagreement among district courts across the country as to whether the 9(b) standard applies to an FDCPA claim. *See Crawford v. Senex Law, P.C.,* 259 F. Supp. 3d 464, 473 (W.D. Va. 2017).

6

III.   **ANALYSIS**

A.   **FDCPA Claims**

Congress enacted the FDCPA for the purposes of eliminating "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692. Section § 1692e forbids the use of "false, deceptive, or misleading representation" in the collection or attempted collection of any debt. Whether a statement is false, misleading, or deceptive for the purposes of the FDCPA is determined according to the standard of the "least sophisticated consumer." *Russell v. Absolute Collection Serv, Inc.,* 763 F.3d 385, 394–95 (4th Cir. 2014). Courts apply this standard in order to ensure that the FDCPA protects all consumers, "the gullible as well as the shrewd." *United States v. Nat'l Fin. Serv., Inc.,* 98 F.3d 131, 136 (4th Cir. 1996) (quoting *Clomon v. Jackson,* F.2d 1314, 1318 (2nd Cir. 1993)). This standard does not encompass a consumer's "bizarre or idiosyncratic interpretations," merely how a "naïve" consumer with a "a quotient of reasonableness" would interpret a potentially false, deceptive, or misleading representation. *Id.* Moreover, in order to be actionable, such statements must also be "material" in that they could "objectively affect the least sophisticated consumer's decision-making." *Powell v. Palisades Acquisition XVI, LLC,* 782 F.3d 119, 126 (4th Cir. 2014). For example, a demand letter that "misstates interest as principal but accurately states the total amount owed" would constitute a technical, not a material, error. *Id.*

Through § 1692f, the FDCPA also protects debtors from collectors' efforts to "use unfair or unconscionable means to collect or attempt to collect any debt." The statute does not define what may be "unfair" or "unconscionable" but provides a "non-exhaustive list of conduct that violates the section." *Hauk v. LVNV Funding, LLC,* 749 F. Supp. 2d 358, 366 (D. Md. Nov. 5, 2010). Such practices include "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by

7

the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The Fourth Circuit has clarified that "express authorization" requires "affirmative sanction or approval," not merely "a lack of express prohibition." *Alexander v. Carrington Mortg. Serv., LLC*, 23 F.4th 370, 377 (4th Cir. 2022). Several courts have construed § 1692f as prohibiting conduct that is not specifically provided for in other provisions of the FDCPA. *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 765 (D. Md. 2012) (collecting cases). To prevail on a § 1692f claim, then, a plaintiff must show conduct that is "separate and distinct" from other alleged FDCPA violations. *Archie v. Nagle & Saller, P.C.*, 790 F. App'x 502, 503 n.1 (4th Cir. 2019).

To state a claim for relief under either § 1692e or § 1692f, Plaintiff must show that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 623 (D. Md. Mar. 30, 2020) (alteration in original). Neither party raises an issue with respect to the first and second prongs but instead disagree over whether Rushmore's alleged actions represented "an act or omission prohibited by the FDCPA." *Best*, 450 F. Supp. 3d at 623. Contee advances a theory of Rushmore's liability under both section § 1692e and § 1692f and the Court addresses each argument.

### 1.    15 U.S.C. § 1692e

In furtherance of his § 1692e claim, Contee claims that Rushmore's practice of labeling fees as "recoverable corporate advances" leaves "no reasonable way for the least sophisticated consumer to know" what the unspecified charge "actually involves." ECF 15, at 26 ¶ 84. Contee alleges this behavior violates subsections (2) and (10), which prohibit, respectively, "the false representation of the character, amount, or legal status of any debt" and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain any

8

information concerning a customer." In response, Rushmore construes Contee's claim as improperly "demand[ing] more detail in payoff statements and monthly statements than the law requires." ECF 21, at 2. In support of this contention, Rushmore cites the plain language of the FDCPA as well several cases which purportedly affirm that debt collectors have no duty to itemize under the statute. *Id.*, citing, *inter alia*, *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014); *Coheley v. Lender Legal Serv., LLC*, No. 8:19-cv-185-T-27CPT, 2019 WL 6311767, at *4 (M.D. Fla. Nov. 25, 2019); *Velez-Aguilar v. Sequium Asset Sols. LLC Inc.*, Civ. No. 22-1109, 2023 WL 1793885, at *3 (3d Cir. Feb. 7, 2023); *Humphreys v. Budget Rent A Car Sys. Inc.*, No. 10-CV-1302, 2017 WL 6497285, at *6 (E.D. Pa. Dec. 19, 2017).

Rushmore mischaracterizes Contee's argument. Contee is not asserting that Rushmore should itemize for the sake of it; rather, he argues that the practice of billing for generic "corporate advances" often does and, in Plaintiff's case, allegedly did, obscure the nature of the debt and mislead the debtor as to what is owed and why. ECF 15, at 2 ¶ 1. Indeed, some of the cases Rushmore cites apprehend this same point. *See, e.g., Humphreys* WL 6497285, at *6 (recognizing that certain circumstances, including deceptive labeling of "recoverable corporate advances," necessitates itemization);*Coheley*, 2019 WL 6311767, at *4 (finding that failure to itemize, even if the costs were allowable under the contract, "could provide a false impression of the amount of debt to the least sophisticated consumer").

Likewise, several other cases, some before this Court, have survived creditors' motions to dismiss on the theory that the terms "corporate advances" or "recoverable corporate advance" on a statement obscure the character of a consumer plaintiff's debt and thus "impair [the consumer plaintiff's] ability to knowledgably assess the validity of the debt." *Flournoy v. Rushmore Loan Mgmt. Serv.*, Civ. No. 19-00407-PX, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020) (citing

*Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004)); *see also Meyer v. Fay Serv., LLC*, 385 F. Supp. 3d 1235, 1243 (M.D. Fla. May 7, 2019); *Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 608 (E.D. Pa. Mar. 28, 2006). This Court recognizes that while Rushmore and other debt collectors may not have an affirmative, specific legal duty to itemize, they *are* nevertheless obligated to avoid practices that would mislead an unsophisticated consumer, which may necessitate proper and sufficient itemization.

In the instant case, the Court finds that Contee plausibly alleges that the vague "recoverable corporate advances" line item was materially misleading as to the character and status of his debt. Contee argues that the term obscured the fact that Rushmore was charging him for fees he allegedly already paid as part of his bankruptcy settlement. ECF 15, at 16 ¶ 52. Though Rushmore responds that it did eventually itemize the "corporate advances" fee in its July 2022 letter to Contee, Contee alleges it only did so over a year after Contee first made inquiries into the nature of the charge, and only after Contee had sent, through counsel, two RESPA Notices of Error. *Id.* at 16 ¶ 53, 17 ¶ 55. By the time Rushmore provided an itemization, Plaintiff alleges that he had already expended time, effort, and money into attempting to clarify what the unexplained charge meant and whether he was obligated to pay it. *Id.* at 26 ¶ 86. Contee thus presents facts sufficient to plausibly allege that Rushmore's practices in this regard were unlawfully misleading or deceptive from the perspective of the least sophisticated consumer.

Nor was Rushmore's eventual itemization sufficiently clear so as to merit dismissal of Contee's claim. The Joint Record indicates that Wells Fargo did inform Contee at the time of his bankruptcy petition in 2018 that it was claiming $720 in attorney's fees, $300 in title costs, $475 in court costs, $60 in recording fees, and a further $960 in attorney's fees, the total of which amounts to $2,515. ECF 22-2, at 32. However, Contee alleges that Rushmore never indicated that

those older fees comprised the single $2,515 charge in "recoverable corporate advances" it started

claiming when it began servicing Contee's mortgage in 2021. ECF 15, at 17 ¶ 55. Indeed, even

in the supposedly detailed itemization explanation it sent to Plaintiff in July 2022, Rushmore only

described the constituent charges as "foreclosure fees" and "foreclosure costs" dating from the

time that Wells Fargo had been the servicer of the mortgage. ECF 22-2, at 71 (noting $720 in

"foreclosure fees" plus $300 in "foreclosure costs" incurred on December 22, 2017; $960 in

"foreclosure fees" plus $475 and $60 in "foreclosure costs" incurred on February 13, 2018; and

$75 in "foreclosure fees" plus $15 and $1.40 in "foreclosure costs" incurred on July 21, 2021).

Some of these charges appear to correspond to the amounts Contee owed to Wells Fargo prior to

his foreclosure settlement, but Rushmore categorized them differently and less specifically than

Wells Fargo had, and provided different dates for when they were incurred. *Id.*[7] Moreover, the

new fees in the amounts of $75, $15, and $1.40 were likewise categorized differently than they

had been when they first appeared in Contee's August 2021 statement. *Id.*

Even after reviewing Rushmore's more detailed explanation of the charges sent in July of

2022, Contee would have still needed to reference a document generated four years earlier by a

different mortgage servicer to understand what he was being charged for. *See* ECF 22-2, at 32.

Contee then would have had to add up the older fees assessed by Wells Fargo in 2018 to arrive at

the sum of $2,515, the same sum Rushmore claimed in "recoverable corporate advances" in 2021

and 2022, in order to even begin to understand the basis of Rushmore's charges. *See id.* at 32, 71.

---

[7] For example, Wells Fargo charged Contee $720 in "attorney's fees" plus $300 in "title costs" on December 18, 2017 and further charged $475 in "filing fees and court costs," $60 in "recording fees," and $960 in "attorney's fees" on January 30, 2018. ECF 22-2, at 32. Meanwhile, Rushmore appears to have listed those charges merely as one of several "foreclosure costs" and "foreclosure fees," respectively *Id.* at 71. Moreover, where Wells Fargo provided the dates the charges were incurred as December 18, 2017 and January 30, 2018, Rushmore listed the dates as December 22, 2017 and February 13, 2018.

Contee would then have to ascertain why he was being charged again for a sum he believed he had already paid when he concluded his bankruptcy case. ECF 15, at 14 ¶ 46. The Court thinks it reasonable to conclude that a "naïve" consumer would be baffled and confused by this web of statements, spanning several years and all concerning a charge they had no reason to expect was still owed. *Nat'l Fin. Serv., Inc.*, 98 F.3d at 136. Thus, the Court finds that Contee has plausibly alleged that, from the perspective of the least sophisticated consumer, Rushmore's practices related to the charging of generic corporate advances are misleading or deceptive.

### 2.   15 U.S.C. § 1692f

Contee also alleges that Rushmore's practice of charging recoverable corporate advances violates § 1692f(1) on the grounds that "no contract or applicable law permits Rushmore to disguise the fees and sums it collects or seeks to collect by using generic labels without itemization or specification." ECF 15, at 25 ¶ 82. In response, Rushmore argues that the nature of the fees it claims under the charge "recoverable corporate advances"—including attorney fees and foreclosure costs—are "valid charges authorized by [Contee's] deed of trust." ECF 21, at 6; *see also* ECF 22-2, at 9.

Neither party's reasoning arrives at the pertinent legal issue. From the face of the complaint, Contee does not allege a § 1692f violation that is sufficiently "separate and distinct" from his § 1692e claims. *Archie*, 790 F. App'x at 503 n.1. Instead, he grounds both claims in his contention that Rushmore's practice of charging vague "recoverable corporate advances" line items is unfair or unconscionable. ECF 15, at 25 ¶ 82. Plaintiff alleges that this same conduct violates § 1692e of the FDCPA and so relief under § 1692f is not also available to him.[8] *See*

---

[8] In the amended complaint, Plaintiff posits the relevance of the Fourth Circuit case *Alexander v. Carrington Mortgage Services, LLC* in determining whether a §1692f violation has occurred. *See* ECF 15, at 2 ¶ 1. Plaintiff reads *Alexander* as prohibiting collections "which are not expressly authorized by contract or law" and are thus presumably prohibited under §1692f(1). However, the

*Stewart,* 859 F. Supp. 2d at 765. Instead, Plaintiff's FDCPA claim may proceed under his § 1692e allegations.

### B.  State Law Claims

#### 1.  MCDCA

Contee also claims that Rushmore's practice of labeling fees as "corporate advances" violates the MCDCA. The MCDCA prohibits debt collectors from collecting or attempting to collect an alleged debt through multiple means, including through conduct that violates the FDCPA. Md. Code Ann., Com. Law § 14-202(11). Because Contee has pled facts sufficient to show plausibility of relief under § 1692e of the FDCPA, his MCDCA claim prevails.[9]

---

case is not applicable here; the plaintiff in *Alexander* alleged only §1692f violations and did not bring any other claim under a separate provision of the FDCPA. *See Alexander* 23 F.4th at 377. The plaintiff therefore did not have to allege distinct conduct that would give rise to a §1692f violation, as Contee does here.

[9] Plaintiff advances another theory of Rushmore's liability under the MCDCPA, based on a contention that Rushmore has further violated the FDCPA in that they allegedly charge property inspection fees in contravention of Maryland's Usury Statute, which prohibits lenders from charging inspection fees on real property. *See* Md. Code Ann., Com. Law. § 12-121. It is far from clear from the face of the complaint that Rushmore actually charged property inspection fees. Plaintiff contends on the one hand that vague charges of "recoverable corporate advances" make it *possible* that Rushmore is charging inspection fees without his knowledge and shows on the other that his original mortgage contract with Wells Fargo permitted collection of such fees. ECF 15, at 17 ¶ 54. However, an allegation that does not rise "above the speculative level" cannot provide a basis on which Contee may state a viable claim. *Twombly,* 550 U.S. at 555. Finally, even if Plaintiff had plausibly alleged that Defendant was charging such fees, the Court does not find Plaintiff's claim viable for the reasons articulated in *Flournoy,* 2020 WL 1285504 at \*5–\*7. In *Flournoy,* Judge Xinis concluded that mortgage assignees are not "lenders" for the purposes of the Usury Statute and so cannot be held liable thereunder. *Id.* at \* 7. Rushmore is not the originator of the mortgage loan, merely the inheritor of it, and thus the Court agrees with Judge Xinis that "[b]ased on fundamental principles of statutory construction," Rushmore is not considered a lender under the Maryland Usury Statute. *Id.*

### 2. MCPA

Contee's final claim at issue concerns the MPCA. The MPCA provides that any violation of a provision of the MCDCA constitutes an "unfair, abusive, or deceptive trade practice" for the purposes of the statute. Md. Code Ann., Com. Law § 13-301(14)(iii). Maryland courts have also recognized that violations of the MCDCA amount to *per se* violations of the MCPA. *See Andrews & Lawrence Pro. Servs., LLC v. Mills*, 223 A.3d 947, 950 (Md. 2020). Since Contee's MCDCPA claim survives through his FDCPA § 1692e claim, his MCPA claim survives, too.[10]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED** in part and **GRANTED** in part. A separate implementing Order will issue.

Dated: September 19, 2024                                    /s/
                                                    Brendan A. Hurson
                                                    United States District Judge

---

[10] Here it may be instructive to take note of courts' differing approaches to the injury requirement for both MCPA and MCDCPA claims. Maryland state courts tend to hold that a showing of actual damages is an element of "any" claim under either statute. *See Assanah-Carrol v. Law Off. of Edward J. Maher, P.C.*, 281 A.3d 72, 84 (Md. 2022). Federal courts interpreting Maryland state law, on the other hand, appear to endorse the idea that only standalone claims, not derivative federal claims, require a showing of actual injury under both the MCPA and MCDCPA. *See, e.g., Alexander*, 24 F.4th at 380. This difference in approach can be harmonized by recognizing that plaintiffs bringing suit under any federal claim must allege injury in fact in order to establish standing for Article III purposes. *See Nanni v. Aberdeen Marketplace*, 878 F.3d 447, 454 (4th Cir. 2017) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992)). In this case, Plaintiff's standing is not at issue; regardless, the Court finds that his amended complaint sufficiently pleads that Plaintiff suffered an injury in fact, thus satisfying this requirement for all of his claims.